FILED

United States District Court
Northern District of Alabama
Southern Division



02 OCT 31 AM 9:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **GARY HILL,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV 01-N-02668-S |
| | ] |
| **METROPOLITAN LIFE INSURANCE CO,** | ] |
| | ] |
| Defendant(s). | ] |

ENTERED
OCT 31 2002

**MEMORANDUM OF OPINION**

### I. Introduction

The plaintiff, Gary Hill ("Hill"), has filed suit against his former employer's disability insurance provider, Metropolitan Life Insurance Company ("MetLife"). The company's employee benefits plan is governed by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001, *et. seq.* Plaintiff claims defendant arbitrarily and capriciously increased the amount of his Social Security benefit from $405 to $913 which subsequently decreased his monthly pension. Defendant maintains the decision was reasonable and claims it is due reimbursement for overpayment because plaintiff received "other income" due to his disability that has not been offset, including workers' compensation benefits and spousal and dependent children Social Security benefits.

This matter is presently before the court on MetLife's motion for summary judgment, filed on August 30, 2002 (Doc. #18). The issues have been briefed by the parties and are

1



now ripe for consideration. Upon due consideration, the motion for summary judgment is due to be granted.

## II.     Statement of Facts

Plaintiff formerly was an employee of Ryder System, Inc. and brings this claim for benefits under the Long Term Disability Plan for Employees of Ryder System, Inc. (the Plan). The Plan provides disability benefits to Ryder's eligible employees as part of its Disability Income Program. The Plan is an ERISA covered Plan and was funded by a group insurance policy issued by Travelers Insurance to Ryder; MetLife is the successor in interest to Travelers Insurance for purposes of the Plan. According to the Plan, monthly benefits are offset by other specified income.

The Plan provides in relevant part:

> The benefit paid by the plan is reduced by the amount of any other benefit income you may be entitled to receive from Workers' Compensation, Social Security, no-fault auto laws and any other government plan or program. Benefits will not be reduced by disability benefits you receive from the Ryder System, Inc. Retirement Plan. The plan will pay the difference between 60% of your base monthly salary and the amount these other sources of disability income provide.

The Plan also discusses Social Security benefits by providing:

> Once the amount of *your* Social Security disability benefit is set, any increase in that benefit will not reduce the benefit you receive from the plan. However, your plan benefit will be reduced if your spouse receives a Social Security benefit that is based on your working career (as opposed to your spouse's working career). (Emphasis in original).

(Doc. #19, Exh. A at MetLife 0313).

On approximately March 17, 1992, plaintiff was injured at work. He subsequently filed for and received Social Security disability benefits and workers' compensation benefits. In

2

November 1996, plaintiff filed a claim for long term disability benefits under the Plan. Defendant approved plaintiff's claim and paid him a base monthly benefit of $750 minus a Social Security offset of $405. (Doc. #19, Exh. A. at MetLife 0188). Plaintiff provided defendant with a letter from Social Security indicating that his initial monthly Social Security benefit was $405 and, thus, MetLife offset that amount from the $750 base amount and paid plaintiff a monthly benefit of $345. (Doc. #19, Exh. A).

In August of 1999, defendant was advised that plaintiff was a salaried employee while working at Ryder Systems, Inc. Defendant reviewed its calculation of the amount due plaintiff based on a report which plaintiff authorized it to receive from the Social Security Administration. (Doc. #19, at MetLife 0085-0087, 0089). Based on that report, defendant determined that the original Social Security award was $913 per month instead of $405, and recalculated what the plaintiff was due based on that amount. (*Id.*). Defendant informed plaintiff that he would be paid under the salaried employees plan and would receive a monthly benefit of $1,435.20 minus a $913 offset for Social Security benefits. Plaintiff's monthly payment was thus increased from $345 to $522. Defendant paid plaintiff $19,211.00 to cover back benefits due based on the recalculation.[1]

### III.   Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] Plaintiff and defendant also present additional facts relevant to the defendant's request for reimbursement. Because the court declines to rule on the issue, it will not include the facts relevant to that issue and not those relevant to plaintiff's claim.

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer, supra*.

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also*

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer, supra.*

## IV. Discussion

### A. Plaintiff's ERISA Claims

MetLife is the Claims Administrator/Payor under the Plan as the successor to The Travelers. (Doc. #19, Sullivan Affid. at ¶¶ 4-6). Both parties agree that MetLife is given authority to "perform all duties related to or concerning the payment of benefits and/or the delivery of services." (Doc. #19, Exh. A at Metlife 308). As the Claim Payor, MetLife is also given the discretion to interpret Plan terms and make benefit decisions. (*Id.*). When the Plan administrator has such discretion, his interpretation will be upheld so long as it is not arbitrary and capricious.[2]

Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989), "a deferential standard of review [is] appropriate when a plan administrator exercises discretionary powers." If a plan's terms vest discretion in the [fiduciary or administrator] to make

---

[2] When the administrator does not have discretion, then the decision is evaluated *de novo* and any ambiguities are more likely to be construed against the drafter. *See Florence Nightingale Nursing v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476 (11th Cir. 1995).

5

eligibility determinations and to interpret the plan, then a court will uphold the administrator's decision, unless the administrator has abused its discretion. *Id.*[3] *See e.g., Firestone*, 489 U.S. at 111; *Sorrells v. Sun Life Assurance Co. of Canada*, 85 F. Supp. 2d 1221, 1227 (S.D. Ala. 2000) (arbitrary and capricious standard applied to plan requiring "satisfactory proof" of claim); *Fine v. Semet*, 699 F.2d 1091, 1093, 1095 (11th Cir. 1983) (holding arbitrary and capricious standard of review appropriate when plan language gave fiduciary "sole discretion" regarding payment of benefits). When applying the arbitrary and capricious standard, "[t]he function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *See e.g., Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989). Usually an administrator's decision will be upheld so long as it was rationally related to a valid plan purpose, not contrary to the plain language of the plan and there is no indication that the administrator acted in bad faith. *See Cook v. Pension Plan for Salaried Employees of Cyclops Corp.*, 801 F.2d 865 (6th Cir. 1986); 2 Ronald J. Cooke, *ERISA Practice and Procedure* § 8:14, at 8-127 (2d ed. 2002) ("Conduct inconsistent with plan purposes, and interpretations which would create an inconsistency between the plan document and summary plan description can establish arbitrary and capricious conduct."); *see also id.* at 8-127, 8-129 (citing cases which suggest that a decision might also be found arbitrary and capricious if it conflicts with express plan provisions, relies on

---

[3] In the Eleventh Circuit, this deferential standard of review from *Firestone* is referred to interchangeably as an abuse of discretion standard and as an arbitrary and capricious standard. *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989).

an unwritten or arbitrary rule, is unreasonable, or is a misinterpretation of authority). Even if the administrator and the applicant offer rational though conflicting interpretations of the plan provisions, the administrator's decision must be allowed to control. *Florence Nightingale Nursing v. Blue Cross Blue Shield of Alabama*, 41 F.3d 1476 (11th Cir. 1995); see also *Paramore v. Delta Airlines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997) ("As long as a reasonable basis appears for [the] decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision.").

Plaintiff argues that he is entitled to a lower offset because the Plan language indicates that once a benefit is "set" it will not change. Defendant counters that the offset was originally established at an erroneously low level. When asked to review the file, defendant obtained the Social Security report and corrected the error. The original offset was based on a 1994 letter from the Social Security administration which indicated that plaintiff initially received a reduced benefit from Social Security due to a worker's compensation offset. The relevant provision reads as follows:

> We have to take into account your weekly workers' compensation payment of $346.67 when we figure your Social Security benefits. Because you receive this payment, we are reducing the benefits you are due. We may have to change the amount of your disability benefits when we receive proof of the amount of your workers' compensation payments. Your benefit will be $405.00 beginning September 1992 and $433.00 beginning in December 1992 and $457 beginning in December 1993. Your benefits were increased beginning December 1993 because of the cost of living. These increases were not reduced because of workers' compensation payments.

(Doc. #19, Exh. A at MetLife 0049).

Defendant contends the letter merely establishes that while plaintiff temporarily received less than his full benefit because of a worker's compensation offset, the *cost of*

7

*living increases* in December 1992 and 1993 were not themselves reduced because of his worker's compensation benefits. This is consistent with the Social Security Report (used by the defendant on review) which, like the 1994 letter, shows that plaintiff received a $28 cost of living increase in 1992 and a $24 increase in 1993. In short, the letter indicates only that while the cost of living increases themselves were not reduced by worker's compensation, plaintiff's Social Security payment was.

Plaintiff "contests" the report but provides no evidence that it was either inaccurate or improperly obtained. Defendant, by contrast, has provided evidence which attests to the report's accuracy. (Doc. #19, Exh. A, ¶ 2; Exh. B ¶¶ 4-6; Exh. C). Consequently, defendant had a reasonable basis for relying on the amount stated in the report rather than the letter. The Plan language is reasonably applied so as not to increase offsets based on cost of living adjustments or changes in the Social Security law. Reading the Plan language as the plaintiff interprets it, however, would result in a smaller deduction, and thus higher Plan benefits, to claimants who initially receive a worker's compensation deduction from their Social Security benefits. As defendant explains:

> MetLife recognizes that the payment of claims which are not covered does not benefit persons insured under the plan as a group, but instead, that such payments could result in increased premiums and/or reduced benefits to the detriment of all participants and beneficiaries. In fact, MetLife owes its policyholders a duty not to pay claims which are not payable under the terms of its policies.

(Doc. #19, Exh. A, ¶ 16). Defendant's decision is therefore consistent with the Plan's language. In addition, the court sees no evidence of bad faith or of any action which would

8

lead the court to believe that the administrator was acting contrary to the purposes of the Plan or to ERISA. *Cook*, 801 F.2d at 865; *Jett*, 890 F.2d at 1139 (11th Cir. 1989).

In conclusion, the court finds that defendant's decision to change the Social Security offset was not arbitrary and capricious. The court finds that the administrator had a reasonable basis to change the offset amount consistent with Plan policy. Accordingly, the court finds the defendant entitled to summary judgment on plaintiff's claim for additional benefits.

**B.     Offset/Reimbursement for Overpaid Benefits**

In addition to its motion for summary judgment on all of the plaintiff's claims, the defendants moved for reimbursement for the plaintiff's "other income" in the form of worker's compensation claims and dependent Social Security benefits. Curiously, the court cannot find *anywhere* in the record evidence that the defendant has in fact *pleaded* that it is entitled to this form of relief. Rule 56 (b) clearly states that: "a party against whom a *claim, counterclaim, or cross-claim is asserted*, . . . may, at any time, move with or without supporting evidence for a summary judgement in the party's's favor as to *all* or *any* part thereof." Likewise, Rule 56(a) provides that "a party seeking to recover upon a *claim, counterclaim, or cross-claim* . . ." The court finds no evidence from any of the *pleadings* filed that defendant has ever filed a counterclaim against plaintiff and the court finds no evidence that the plaintiff ever demanded this kind of relief. In fact, the first time this allegation was made (that the court can find) was in the motion for sumary judgment where

9

defendant requested a "ruling." (Doc. #18, p. 2). There being no counterclaim, there is nothing for the court to decide on this issue.[4] It won't.

## V. Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion

Done, this 30th of October, 2002.

Edwin Nelson
United States District Judge

---

[4] The court acknowledges that on occasion it tends to be overly persnickety, but this is not one of those times. The defendant will not be allowed to amend its pleadings by way of a counterclaim, asserted for the first time in a motion for summary judgment.

10